UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

MICHELLE TENZER-FUCHS, on behalf of :
herself and all others similarly situated, :
 :                                               No.: _____
Plaintiffs, :
 :                                               **CLASS ACTION COMPLAINT**
v. :
 :                                               **JURY TRIAL DEMANDED**
STITCH FIX, INC., :
 :
Defendant. :
 :
 :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## INTRODUCTION

1.     Plaintiff MICHELLE TENZER-FUCHS (hereinafter "Plaintiff"), on behalf of

herself and others similarly situated, brings this civil rights action against

Defendant STITCH FIX, INC. (hereinafter "Stitch Fix" or "Defendant") for its

failure to design, construct, maintain, and operate its company website in a way that

is fully accessible to and independently usable by Plaintiff and other blind or

visually-impaired consumers.

2.     Plaintiff is a visually-impaired and legally blind person who suffers from what

constitutes a "qualified disability" under the Americans with Disabilities Act of

1990 ("ADA") and thus requires screen-reading software to read website content

using her computer. Plaintiff uses the terms "blind" or "visually-impaired" to refer

to all people with visual impairments who meet the legal definition of blindness in

that they have a visual acuity with correction of less than or equal to 20 x 200. Some

blind people who meet this definition have limited vision while others are completely impaired and have no vision.

3.      Defendant's denial of full and equal access to its website, and the resulting denial of equal access to the goods and services offered thereby, is a violation of Plaintiff's rights under the ADA.

4.      Because Defendant's website, www.stitchfix.com (the "Website" or "Defendant's website"), is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Defendant's website contains various and multiple access barriers that make it extremely difficult – if not impossible – for blind and visually-impaired consumers to attempt to complete a transaction.

5.      Plaintiff seeks a permanent injunction to initiate a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

<u>JURISDICTION AND VENUE</u>

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq.*, and 28 U.S.C. § 1332.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, ("NYCHRL") claims.

8.      Venue is proper in this district under 28 U.S.C. §1391(a)(2) because a substantial part of the acts and/or omissions giving rise to Plaintiff's claims occurred in this District. Defendant have also been and is continuing to commit the alleged acts

and/or omissions in this District that caused injury and violated Plaintiff's rights and the rights of other disabled individuals.

9.  Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Eastern District of New York that caused injury and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: on several separate occasions, Plaintiff has been denied the full use and enjoyment of the facilities, goods, and services offered to the general public on Defendant's Website in Nassau County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access multiple times in the past, and now deter Plaintiff on a regular basis from accessing the Defendant's Website in the future.

10. This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

11. Plaintiff MICHELLE TENZER-FUCHS, at all relevant times, is and was a resident of Nassau County, New York.

12. Plaintiff is legally blind, visually-impaired, and handicapped person, making her a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, and the NYCHRL.

13. Defendant is and was at all relevant times an Delaware Corporation doing business in New York.

14. Defendant owns, manages, controls and maintains the Website, and its facilities, goods, and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

15. A Website is a place of accommodation defined as "places of exhibition and entertainment," places of recreation," and "service establishments." 28 CFR §§ 36.201 (a); 42 U.S.C. § 12181 (7).

<u>NATURE OF ACTION</u>

16. The Internet today is a significant source of information, constituting both a portal leading to endless discoveries, and a tool that can be actively used for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as for accomplishing many other activities pursued by sighted, blind, and visually-impaired persons alike.

17. Although the Internet has been vital to human life for some time now, it has become exponentially more essential with the rise of the COVID-19 pandemic. As this virus has swept the country, it has caused the world to shift to an almost entirely online model. It is now, more than ever, essential for restaurants to have a website for customers to place pick-up and delivery orders. Entertainment venues have had to adapt to being able to deliver performances to their audiences via their websites or an online streaming service. Educational institutions of all levels have had to shift away from classroom teaching entirely and replace it with completely virtual instruction, often for the first time in their histories. Furthermore, due to store closures and new building capacity limitations, a large majority of stores today must now rely on their websites to serve as the main point of contact and sale between their business and consumers. Thus, in order for blind and visually impaired

individuals to engage in all of these newly networked aspects of our world today, they must be able to use screen reading software.

18. Blind and visually impaired users of Windows operating system computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. NonVisual Desktop Access ("NVDA") is among the most popular.

19. In today's world, blind and visually-impaired people have the ability to access websites using keyboards in conjunction with a software program that either vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, goods and contained thereon.

20. For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

21. The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1"). WCAG 2.1 are well-

established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.

22.      Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.      Alternative text ("alt-text") or text equivalent for every non-text element. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture;

b.      Videos that do not maintain audio descriptions;

c.      Title frames with text are not provided for identification and navigation;

d.      Equivalent text is not provided when using scripts;

e.      Forms with the same information and functionality available for sighted persons are not provided;

f.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of the content;

g.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

h.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

i.      Web pages do not have titles that describe the topic or purpose;

j.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

k.      One or more keyboard operable user interfaces lack a mode of operation where the keyboard focus indicator is discernible;

l.      The default human language of each web page cannot be programmatically determined;

m.      Changing the setting of a user interface component automatically causes a change of context that the user has not been advised of before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content implemented by using markup languages, elements do not have complete start and end tags, are not nested according to their specifications, contain duplicate attributes, and/or are not unique;

p.      Inaccessible Portable Document Format (PDFs); and,

The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be

programmatically set; and/or notification of changes to these items is not available to user agents, including via assistive technology.

STATEMENT OF FACTS

23.    Defendant is a personalized style service and clothing retailer catering to both men and women. Defendant is an online retailer of men and women's clothing, footwear, jewelry, and other accessories, featuring a wide variety of both established and up-and-coming brands. Defendant owns, operates, manages, and controls the website www.stitchfix.com (its "Website"), which allows Defendant to function as a global style service and clothing retailer. With few to no brick and mortar stores currently operating today, Defendant's Website is the exclusive point of sale for Defendant's products.

24.    Defendants Website is a commercial marketplace. The Website offers features of a physical marketplace in that it allows all consumers to browse goods and services, notifies consumers of special sale or clearance items, provides details about the products, and completes purchases of Defendant's products, which Defendant will thereafter ensure the delivery of throughout the United States, including in New York State.

25.    Defendant's Website is integrated with its retail business operations serving as its gateway. The Website offers products and services for online sale and general delivery to the public. The Website offers features which ought to allow users to learn about Defendant's products and services, browse for items, access navigation bar descriptions, prices, coupons, and sale discount items, and peruse the numerous items offered for sale. The features offered by www.stitchfix.com include personalized style selections customized to each consumer's needs, details about

the products and/or items offered, information about the company, review pages, and purchase portals.

26.    It is, upon information and belief, Defendant's policy and practice to deny Plaintiff and other blind or visually-impaired users access to its Website, thereby denying the facilities and services that are offered and integrated with its retail operations. Due to its failure and refusal to remove access barriers to its Website, Plaintiff and visually-impaired persons have been and are still being denied equal access to Defendant's retail operations and the numerous facilities, goods, services, and benefits offered to the public through its Website.

27.    Defendant's Website is a commercial marketplace without any physical location. Thus, Defendant's Website is the main point of sale for its business operation.

28.    Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff has visited the Website on separate occasions using a screen-reader.

29.    During Plaintiff's visits to the Website, www.stitchfix.com, the last occurring in July of 2020, Plaintiff encountered multiple access barriers which effectively denied her the full enjoyment of the goods and services of the Website. Plaintiff visited Defendant's Website with an intent to browse and attempt to sign up for the personalized style service Defendant offers. Despite her efforts, however, Plaintiff was denied a shopping experience similar to that of a sighted individual due to the website's lack of a range of features and accommodations, which effectively barred Plaintiff from being able to sign up for Defendant's service or purchase any of Defendant's products.

30.     Many features on the Website lacks alt. text, which is the invisible code embedded beneath a graphical image. As a result, Plaintiff was unable to differentiate what products were on the screen due to the failure of the Website to adequately describe its content.

31.     Many features on the Website also fail to add a label element or title attribute for each field. This is a problem for the visually impaired because the screen reader fails to communicate the purpose of the page element. It also leads to the user not being able to understand what he or she is expected to insert into the subject field. This was an issue on Defendant's Website particularly in the size selection section. As a result, Plaintiff and similarly situated visually impaired users of Defendant's Website are unable to enjoy the privileges and benefits of the Website equally to sighted users.

32.     Plaintiff has made multiple attempts to complete a purchase on www.stitchfix.com, most recently in July of 2020, but was unable to do so independently because of the many access barriers on Defendant's website. These access barriers have caused www.stitchfix.com to be inaccessible to, and not independently usable by, blind and visually-impaired persons.

33.     The Website also contained a host of broken links, which is a hyperlink to a non-existent or empty webpage. For the visually impaired this is especially paralyzing due to the inability to navigate or otherwise determine where one is on the website once a broken link is encountered. For example, upon coming across a link of interest, Plaintiff was redirected to an error page. However, the screen-reader failed

to communicate that the link was broken. As a result, Plaintiff could not get back to her original search.

34.    These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from accessing the Website.

35.    Due to the inaccessibility of Defendant's Website, blind and visually-impaired customers such as Plaintiff, who need screen-readers, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public on its Website. The access barriers Plaintiff encountered have caused a denial of Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from visiting the Website, presently and in the future.

36.    But for the Website's access barriers, Plaintiff would have returned to and further utilized Defendant's Website. However, because the Website was effectively inaccessible to Plaintiff, she no longer intends to revisit the site.

37.    If the Website was equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

38.    Because simple compliance with the WCAG 2.1 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

        a.    Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

-11-

b.      Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

c.      Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff, as a member of a protected class.

39.   Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

40.   The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

41.   Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2)  and seeks a permanent injunction requiring:

a.   that Defendant retain a qualified consultant acceptable to Plaintiff ("Mutually Agreed Upon Consultant") who shall assist it in improving the accessibility of its Website so the goods and services on them may be equally accessed and enjoyed by individuals with vision related disabilities;

b.   that Defendant work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content

development be given web accessibility training on a periodic basis, including onsite training to create accessible content at the design and development stages;

c.    that Defendant work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether its Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

d.    that Defendant work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether its Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

e.    that Defendant work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and tollfree phone number to report accessibility-related problems; and

f.    that Plaintiff, their counsel and its experts monitor Defendant's Website for up to two years after the Mutually Agreed Upon Consultant validates it is free of accessibility errors/violations to ensure it has adopted and implemented adequate accessibility policies.

42.    Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

43.    Defendant has, upon information and belief, invested substantial amounts of money in developing and maintaining its Website and, through the site, has generated significant revenue. The invested amounts are far greater than the associated cost of making their Website equally accessible to visually-impaired consumers.

44.    Without injunctive relief, Plaintiff and other visually-impaired consumers will continue to be unable to independently use the Website, violating their rights.

<u>CLASS ACTION ALLEGATIONS</u>

45.    Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services, during the relevant statutory period.

46.    Plaintiff, on behalf of herself and all others similarly situated, seeks to certify a New York City subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the City of New York who have attempted to access Defendant's Website and as a result have been denied access to the equal enjoyment of goods and services offered, during the relevant statutory period.

47.    Common questions of law and fact exist amongst Class, including:

a.    Whether Defendant's Website is a "public accommodation" under the ADA;

b.    Whether Defendant's Website is a "place or provider of public accommodation" under the NYCHRL;

c.    Whether Defendant's Website denies the full and equal enjoyment

of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the ADA; and

d.      Whether Defendant's Website denies the full and equal enjoyment of its products, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYCHRL.

48.   Plaintiff's claims are typical of the Class. The Class, similarly, to the Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant has violated the ADA or NYCHRL by failing to update or remove access barriers on its Website so either can be independently accessible to the Class.

49.   Plaintiff will fairly and adequately represent and protect the interests of the Class Members because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the Class Members. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

50.   Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class Members predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

51.   Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial

system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

<u>FIRST CAUSE OF ACTION</u>
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

52.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

53.    Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

54.    Defendant's Website is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as such, must be equally accessible to all potential consumers.

55.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

56.    Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

57.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

58.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

59.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

SECOND CAUSE OF ACTION
VIOLATIONS OF THE NYCHRL

60.     Plaintiff, on behalf of herself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

61.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor,

manager, superintendent, agent or employee of any place or provider of public accommodation, because of . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

62. Defendant's Website is a sales establishment and public accommodations within the definition of N.Y.C. Admin. Code § 8-102(9).

63. Defendant is subject to NYCHRL because it owns and operates its Website, making it a person within the meaning of N.Y.C. Admin. Code § 8-102(1).

64. Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Website, causing its Website and the services integrated with such Website to be completely inaccessible to the blind. The inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

65. Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

66. Defendant's actions constitute willful intentional discrimination against the Sub-Class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

       a.     constructed and maintained a website that is inaccessible to blind

class members with knowledge of the discrimination; and/or

b.       constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.       failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

67.    Defendant has failed to take any prompt and equitable steps to remedy their discriminatory conduct. These violations are ongoing.

68.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of its Website under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the class will continue to suffer irreparable harm.

69.    Defendant's actions were and are in violation of the NYCHRL and therefore Plaintiff invokes her right to injunctive relief to remedy the discrimination.

70.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

71.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

72.    Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION
### DECLARATORY RELIEF

73.   Plaintiff, on behalf of herself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

74.   An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its Website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its Website, which Defendant owns, operations and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq.* prohibiting discrimination against the blind.

75.   A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.   A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

b.   A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.      A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York

d.      An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and her attorneys as Class Counsel;

e.      Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of their civil rights under New York City Human Rights Law;

f.      Pre- and post-judgment interest;

g.      An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.      Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated:      Forest Hills, New York
            July 9, 2020


**SHALOM LAW, PLLC.**

By: */s/Jonathan Shalom*
Jonathan Shalom, Esq.
105-13 Metropolitan Avenue

Forest Hills, New York 11375
Tel: (718) 971-9474
Email: Jshalom@JonathanShalomLaw.com

**ATTORNEYS FOR PLAINTIFF**